# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

   v.                                    **Case No. 14-CR-196**

**ASHLEY DOVER**
        **Defendant.**

## DECISION AND ORDER

Defendant Ashley Dover moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, I deny her motion.

## I. BACKGROUND

In this case, defendant pleaded guilty to access device fraud and aggravated identity theft, and on March 7, 2017, Judge Clevert sentenced her to 90 months in prison. On July 6, 2017, in Case No. 16-CR-182, Judge Stadtmueller sentenced defendant to 12 months and 1 day in prison, running consecutively to the sentence in this case, on her guilty plea to failure to appear. She is currently serving her sentences at FCI Tallahassee, with a projected release date of March 5, 2024.

On May 7, 2020, defendant filed the instant motion for sentence modification. The case was reassigned to me due to Judge Clevert's retirement, and I referred the motion to Federal Defender Services ("FDS") for review, pursuant to the court's administrative order regarding First Step Act motions. After FDS declined to supplement the pro se filing, I ordered the government to respond, and defendant submitted several filings in reply. The matter is now ready for decision.

## II.  COMPASSIONATE RELEASE STANDARDS

Section 3582(c)(1)(A) permits the court to modify a term of imprisonment upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on her behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A).  On the merits, the court may grant relief, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, if it finds that "extraordinary and compelling reasons" warrant such a reduction and that such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

The statute does not define the term "extraordinary and compelling reasons."  Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  See 28 U.S.C. § 994(t).[1]  The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)    (A) extraordinary and compelling reasons warrant the reduction . . .

---

[1]Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  Id.

2

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons,

3

> there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. "As a result, a growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement does not constrain a court's independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-222-NR, 2020 U.S. Dist. LEXIS 93935, at *15 (W.D. Pa. May 29, 2020). In United States v. Scott, No. 17-CR-156, 2020 U.S. Dist. LEXIS 85554, at *17-18 (E.D. Wis. May 15, 2020), I adopted this position. See also United States v. Maumau, No. 2:08-cr-00758-TC-11, 2020 U.S. Dist. LEXIS 28392, at *5-6 (D. Utah Feb. 18, 2020) (collecting cases).

Giving the statutory terms their ordinary meaning, a defendant seeking compassionate release would need to demonstrate that her situation is extraordinary, i.e., beyond what is usual, customary, regular, or common, and her need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. Scott, 2020 U.S. Dist. LEXIS 85554, at *20; see also United States v. Ramirez, No. 17-10328-WGY, 2020 U.S. Dist. LEXIS 83363, at *6 (D. Mass. May 12, 2020) ("The policy contained in section 1B1.13 serves as helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive.") (internal quote marks omitted); United States v. Pinto-Thomaz, No. 18-cr-579 (JSR), 2020 U.S. Dist. LEXIS 64444, at *4-5 (S.D.N.Y. Apr. 13, 2020 (holding that the court "has discretion to

4

grant compassionate release motions on grounds that are distinct from, but of similar magnitude and importance to, those specifically enumerated in Application Note 1 to U.S.S.G. § 1B1.13").

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020); see also U.S.S.G. § 1B1.13(2) (stating that release should be denied if the defendant would pose "a danger to the safety of any other person or to the community").

### III. POSITIONS OF THE PARTIES

In her motion, defendant asks the court to reduce her prison sentence to time served, presenting several grounds for that request. First, she indicates that during her incarceration she has suffered from a painful toe condition, which BOP medical personnel failed to properly treat, demonstrating deliberate indifference to her medical needs contrary to the Eighth Amendment. (R. 381 at 2-3.) Because the BOP has refused to provide adequate care, she

5

asks for compassionate release so that she can provide self-care for her own medical needs. (R. 381 at 4.)

Second, defendant indicates that she has been subjected to sexual harassment by BOP employees. However, she declines to make specific allegations due to concerns about reprisal. She mentions previous lawsuits and identifies BOP personnel previously found to have engaged in sexual misconduct. She also names two current officers, with whom she has contact, alleged to have engaged in misconduct.[2] (R. 381 at 4.) She contends that the court should find that the exposure to abuse and harassment she has experienced is an extraordinary and compelling reason warranting a reduction of sentence. (R. 381 at 5.)

Third, defendant indicates that while in custody she has participated in programming and compiled a near perfect disciplinary record. She indicates that her ability to complete these programs considering the conditions of her confinement is another extraordinary and compelling reason warranting release. (R. 381 at 5; R. 381-21.)

Fourth, defendant references the COVID-19 pandemic, indicating that she is a low-level, non-violent offender whose health would make her vulnerable to a potential outbreak in prison. She attaches a medical note indicating that she suffers from asthma.[3] (R. 381-20, Ex. X.) She

---

[2]Defendant attaches to her motion declarations from other inmates discussing sexual harassment and abuse at BOP facilities. (R. 381-6, Ex. G; R. 381-7, Ex. I; R. 381-8, Ex. J; R. 381-9, Ex. K; R. 381-10, Ex. L.) None of these statements appear to specifically reference defendant or the conditions she has experienced. Defendant also attaches newspaper articles about corrections officers accused of misconduct. (R. 381-11, Ex. M; R. 381-12, Ex. N.) It appears these officers worked at different facilities, and the articles do not specifically mention defendant. Declarations from two other inmates reference an allegedly abusive guard at FCI Tallahassee. (R. 381-14, Ex. P; R. 381-13, Ex. O.) However, these statements also do not specifically mention defendant.

[3]The note indicates, in pertinent part, "28 Year old female in for CCC Asthma. Inmate states she develops symptoms of cough and tightness around heavy chemicals. Complaint 1)

6

further notes that social distancing and other measures recommended by the CDC to reduce the spread of the virus are not possible in prison, and she contends that the BOP is not prepared for an outbreak. (R. 381 at 5.)

Regarding the § 3553(a) factors, defendant contends that the time she has served is a sufficient deterrent. She further contends that no more is needed to protect the public, given her exemplary post-conviction conduct in prison, the non-violent nature of the offense, and the absence of violence from her history. (R. 381 at 6.) Defendant acknowledges that she is a recidivist offender but indicates that she has through courses gained a better understanding of herself and her criminal conduct.[4] Defendant also indicates that she has a sound release plan, with family support and employment options. (R. 381 at 6.) Finally, she indicates that due to her conditions of confinement further incarceration would be greater than necessary to provide just punishment. (R. 381 at 6.)

Defendant concludes that she is able to bring her motion because more than 30 days have elapsed since she made a request to the warden. (R. 381 at 5; R. 381-1, Ex. A.)

In its response opposing the motion,[5] the government indicates that defendant is now

---

PULMONARY: Asthma. Denies recent attacks, reports coughing and some wheezing day and mostly at night. PLAN: Albuterol HFA, Mometasone Steroid."

[4] The PSR indicates that defendant was convicted of credit card fraud and identity theft in Mississippi state court in February 2013 and aggravated identity theft in federal court (Southern District of Mississippi) in September 2012. (PSR ¶¶ 62, 63.)

[5] The government first argues that the motion should be denied for failure to exhaust, as defendant presented a request for compassionate release to the warden on May 12, 2020, and the warden had not yet ruled. (R. 386 at 4.) In a supplemental submission, the government notes that defendant's requests were denied by the warden on May 22 and May 29, 2020. (R. 390.) Because 30 days have now passed since defendant made her request to the warden, I may address the motion on the merits. See also Scott, 2020 U.S. Dist. LEXIS 85554, at *10 (citing United States v. Taylor, 778 F.3d 667, 671 (7th Cir. 2015)) (holding that the exhaustion

7

30 years old, suffers from no serious medical conditions, and is confined at an institution with no reported cases of COVID-19. (R. 386 at 1, 10, 13.) The government notes that defendant's toe fungus condition, even if not adequately treated by the BOP, is not comparable to those conditions listed in U.S.S.G. § 1B1.13. The government further notes that, while the CDC has acknowledged that persons with moderate to severe asthma may be at higher risk of severe illness from COVID-19, defendant presents no medical evidence demonstrating that her condition falls in the category; indeed, asthma seems to be a tertiary concern in her motion, presented only briefly after the more detailed discussion of the toe issue and sexual harassment. (R. 386 at 13-14.) The government concludes that given her relative youth and overall good health,[6] the court should not order release for medical reasons. Finally, the government notes that courts have not found allegations of sexual harassment to constitute grounds for compassionate release. (R. 386 at 15.)

The government further argues that modification is not supported by the § 3553(a)

---

requirement is not jurisdictional). The government also notes that defendant has a detainer lodged by the state of Mississippi, meaning that even if this court modifies the federal sentence she would not be released but rather transferred to another facility, increasing her risk of coming down with the virus. (R. 386 at 11.) In reply, defendant indicates that the state of Mississippi has reinstated her parole, and she is waiting for paperwork to be processed to remove the detainer. (R. 391 at 3.) She attaches to a later submission a certificate of parole from Mississippi. (R. 397.) Because I find that defendant has failed to demonstrate extraordinary and compelling reasons for modifying the federal sentence, I need not decide whether any state detainer would provide grounds for denying relief.

[6]The PSR, in discussing defendant's physical condition, states: "Ms. Dover is 5'6" tall, weighs 160 pounds, with brown eyes and brown hair. The defendant denied having any tattoos, birthmarks, or significant scars. Ms. Dover described her overall health as good, noting she is not currently under the care of a physician. The defendant reported she was diagnosed with athletic asthma, which is aggravated by strenuous activity. Ms. Dover uses an inhaler, as needed, to treat this condition. She denied any prior hospitalizations or other medical concerns." (PSR ¶ 140.)

8

factors. (R. 386 at 15-17.) The government notes that, while defendant is a non-violent offender, her financial fraud was extensive, chronic, aggravated, and carried out with determination whenever she got the opportunity. As indicated in the PSR, her financial fraud began when she was a Mississippi college student, where she tried to make $5000 to $10,000 per week from credit card fraud. (PSR ¶¶ 18-19.) She found such fraud "addicting" and was "the boss" of a fraud operation, which enabled her to pay cash for her car and to buy a car for her boyfriend. (Id. ¶ 20.) She had "insiders" at retail stores to compromise customers' credit accounts; she explored having offshore accounts to stash her stolen money; and she offered an individual $3500 a week to obtain the mothers' maiden names of 30-50 persons to facilitate fraud. (Id.) From August 2009 to March 2012, she distributed 3856 credit card account numbers via email, on which accounts $1,778,436 was stolen in 785 transactions. (Id. at ¶¶ 23-24, 40.)

Further aggravating the case, defendant absconded from pretrial supervision, failed to appear for hearings in this district in August and September 2016, and went on a multi-state crime spree that did not end until December 10, 2016, when she ran from police in Florida and gave false names when finally arrested. (Id. at ¶¶ 9, 43, 55, 58, 67-125.) In January 2017, after being taken into custody, defendant was abusive and resistant to law enforcement at a detention center in Oklahoma, causing officers to place her in restraints. (Id. at ¶ 121.) The government concludes that given these factors Judge Clevert had good reason to find that the § 3553(a) factors required a sentence of 90 months' imprisonment to protect the public, provide just punishment, and deter defendant from future criminal conduct. The government concludes that there is nothing in the record to indicate that this decision was unwarranted or that the calculus has now changed such that the sentenced should be reduced by nearly four years.

9

(R. 386 at 17.)

In a supplemental brief, defendant criticizes the BOP's response to the COVID-19 pandemic. (R. 389 at 1-2.) She further contends that some officers at her facility have been indifferent to inmate health by refusing to wear masks, and that she lives under conditions that make social distancing impossible. (R. 389 at 2-3.) Defendant also repeats her claim that the BOP has been indifferent to her toe condition by failing to take instructions from a specialist and persisting in a course of treatment known to be ineffective. (R. 389 at 3.)

In a reply submission, defendant again criticizes the BOP's response and implementation of expanded home confinement authority under the CARES Act. (R. 391 at 1-2.) She also notes that, while FCI Tallahassee reports no cases, there is no vaccine and thus a significant risk of the virus spreading in the prison. (R. 391 at 3.)

Defendant appears to concede that her toe condition is not comparable to those listed in the Sentencing Commission's policy statement; rather, she argues that the conditions of her confinement, including the BOP's indifference to her toe condition and inability to provide a safe environment free of sexual harassment, results in cruel and unusual punishment which is both extraordinary and compelling. (R. 391 at 4.) She relies on Eighth Amendment cases describing when a medical condition is objectively serious. However, she acknowledges that, after a delay, her toe condition has finally responded to treatment. (R. 389 at 4.)

Regarding her asthma, defendant contends that the location of the discussion of that condition in her original motion had nothing to do with its importance but rather was because she had practically finished the motion at the time the COVID-19 pandemic arose. (R. 391 at 7.) She further asserts that her asthma has progressed to a moderate to severe case. (R. 391 at 7.) She cites health information about asthma provided by her mother but provides no

10

further medical evidence of the alleged worsening of her specific condition. (R. 391 at 7-9.)

Regarding the government's § 3553(a) discussion, defendant indicates that she absconded out of fear and a sense of hopelessness and indicates that she did not possess the cognitive skills she now does after completing programming. She indicates that she has worked hard to improve herself and largely stayed out of trouble. (R. 391 at 9.) She concludes that a reduced sentence still reflects the seriousness of the offense while taking into account her rehabilitative efforts. (R. 391 at 10.) She also presents various letters from family and supporters. (R. 392, 394.)

In an addendum to her reply, defendant notes a positive test at her facility and contends that given her chronic lung disease she is particularly vulnerable. (R. 393 at 1.) She contends that given conditions in Florida, and the BOP's ineffective measures, there are likely to be more cases.[7] (R. 393 at 1.) She again notes the higher risk of infection in the context of institutional confinement (R. 393 at 2) and again criticizes the BOP's efforts (R. 393 at 4).

In another addendum, defendant notes that a judge in Connecticut ordered the BOP to evaluate inmates for release from the Danbury facility, with the judge further noting that the BOP has been stingy in exercising its own release authority. (R. 395 at 1-2.) Defendant also references a court order to protect vulnerable inmates at the Elkton facility. (R. 395 at 3.) She contends that these suits show the BOP is not taking inmate health seriously. (R. 395 at 4.) She presents no further medical evidence regarding her asthma, however. (R. 395 at 4-5.) She does attach another complaint she wrote about officers not wearing masks (R. 395, Ex. 12), as well as additional exhibits documenting complaints about corrections officers and other

---

[7]According to the BOP's website, FCI Tallahassee now has two confirmed cases. https://www.bop.gov/coronavirus/ (last visited July 27, 2020).

11

shortfalls in the BOP's response, and an affidavit from a doctor filed in a different case (R. 396).

Finally, in a letter, defendant contends that drug use and sexual harassment are rampant at her facility. She also notes that Florida has become the epicenter for new cases. (R. 398.)

## IV. DISCUSSION

Having carefully considered all of defendant's submissions, I conclude that she has failed to demonstrate extraordinary and compelling reasons for release.

First, defendant does not establish that her toe condition constitutes the sort of serious medical condition that would warrant the extraordinary remedy of sentence modification. Defendant relies primarily on Eighth Amendment cases describing the obligation to address prisoners' serious medical needs, but she cites no authority suggesting that any condition serious enough to require treatment also supports a claim for immediate release. Nor does she establish that she will suffer irreparable harm due to this condition unless released.

Second, while defendant raises serious concerns regarding sexual misconduct in BOP facilities, she makes no specific allegations about her situation. Relief under § 3582(c)(1)(A) is generally designed to address a defendant's individual circumstances, rather than conditions broadly applicable to prisoners. See Scott, 2020 U.S. Dist. LEXIS 85554, at *22 ("[R]eliance on circumstances applicable to everyone in prison would appear to read the term 'extraordinary' out of the statute.").

Third, while defendant is to be commended for taking advantage of programming opportunities, Congress has indicated that rehabilitation alone is not considered an extraordinary and compelling reason for release. 28 U.S.C. § 994(t). Even considering these

12

efforts in combination with her other asserted grounds for relief, I cannot find the situation extraordinary.

Fourth, regarding defendant's COVID-19 related arguments, courts have tended to deny compassionate release motions based on general concerns about possible exposure, granting relief to prisoners particularly vulnerable to the virus. United States v. Johnson, No. 17-cr-162, 2020 U.S. Dist. LEXIS 93065, at *9 (E.D. Wis. May 28, 2020). While defendant suffers from asthma, she presents no medical evidence showing that her condition falls in the moderate to severe category referenced by the CDC.[8] See United States v. Adeyemi, Np. 06-124, 2020 U.S. Dist. LEXIS 117743, at *55 (E.D. Pa. July 6, 2020) (denying release where the defendant failed to produce evidence of moderate to severe asthma, and collecting cases). And while the conditions faced by prisoners during the pandemic are relevant in deciding a compassionate release motion, such general concerns alone will not suffice. Johnson, 2020 U.S. Dist. LEXIS 93065, at *9. Nor is a compassionate release motion the proper vehicle for litigating the adequacy of the BOP's response to the pandemic. See, e.g., Bartlett, 2020 U.S. Dist. LEXIS 101393, at *19.

Finally, even if defendant could demonstrate extraordinary and compelling reasons, the § 3553(a) factors would weigh against modifying her sentence. As the government notes in its response, defendant orchestrated a wide ranging fraud scheme causing significant losses. She then absconded from pre-trial supervision and apparently continued engaging in fraud. She also has two prior convictions for similar conduct. While I commend defendant for her

---

[8]The CDC indicates that persons with moderate to severe asthma might be at increased risk. They are not included among those who are at increased risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.

13

rehabilitative efforts, the need to provide just punishment, to promote respect for the law, and to protect the public from further financial crimes support leaving the sentence unmodified.

## V.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 381) is denied.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2020.

s/ Lynn Adelman
LYNN ADELMAN
District Judge